# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARCUS DAVIS** | **CIVIL ACTION NO. 14-683** |
| **V.** | **JUDGE JOHN W. deGRAVELLES** |
| **TOYOTA MOTOR SALES** | **MAG. JUDGE RICHARD L. BOURGEOIS, JR.** |

## RULING AND ORDER

Before the Court is Toyota Motor Sales, U.S.A., Inc.'s Motion to Dismiss Pursuant to Fed. Rule Civ. Pro. 12(b)(6). (Doc. 11). Plaintiff opposes the motion. (Doc. 14). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Oral argument is not necessary.

After carefully considering the law, facts, and arguments of the parties, Defendant's motion to dismiss is granted, and Plaintiff's claims are dismissed without prejudice. Plaintiff is given twenty-eight (28) days within which to amend his complaint. In the event that Plaintiff fails to file an amendment to his complaint within that time, his claims will be dismissed with prejudice.

## I.     Background

### A.     Factual Allegations

*Pro se* Plaintiff Marcus Davis brought suit against Toyota Motor Sales ("Defendant") on October 29, 2014, alleging that the airbags in a 2008 Toyota Sienna ("Sienna") that he was driving failed to deploy when he was in a car accident on September 9, 2008.[1] (Doc. 1-1, p. 19).

---

[1] While Plaintiff's complaint is inartful, the Supreme Court has instructed that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal citations and quotation marks omitted). Thus, the Court has interpreted Plaintiff's complaint liberally.

Plaintiff alleges that he is a veteran of the United States Army. *Id.* Plaintiff alleges that he was employed by "ICF consultant" ("ICF") between April 30, 2007 and March 17, 2009. (Doc. 1, p. 2). During his employment, Plaintiff asserts that ICF provided to him a Sienna. (Doc. 1-1, p. 19). Plaintiff further alleges that following Hurricane Gustav, when the "traffic lights were not working," an accident occurred when he was driving the Sienna. (Doc. 1, p. 2). The Sienna was struck by another vehicle while at a four-way stop, *Id.*, and allegedly caused his vehicle to spin one-hundred and eighty degrees. *Id.* Plaintiff asserts that the "airbags never deployed, leaving [him] with multiple injuries."[2] *Id.*

Plaintiff alleges that he was "not given a chance to be diagnosed and treated despite … being covered by [his] company insurance[.]" (Doc. 1-1, p. 19). He claims that he was pressured "not [to go] to the Doctor or [he] would lose [his] job." *Id.* He alleges that the injuries he sustained as a result of the crash have "become worse since the accident over the years" and have left him "virtually unemployable." *Id.* Plaintiff claims that he submitted an injury report and proof in writing to Defendant.[3] *Id.*

Plaintiff seeks to recover damages for the injuries he suffered because of the alleged defective airbag. (Doc. 1, p. 1).

**B.    Present Motion**

Defendant now moves for dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that "Plaintiff's claims … have prescribed, and, as such, [P]laintiff has not stated a claim upon which relief may be granted." (Doc. 11-1, p. 2).

---

[2] Plaintiff does not clearly allege what injuries he suffered as a result of the accident. Documents attached to the complaint show that he was diagnosed with "cervical strain" on September 9, 2008, but he was able to resume work the same day. (Doc. 1-1, p. 10). A referral form provides that he was diagnosed with "pain in limb" on January 9, 2013. (Doc. 1-1, p. 12). An MRI performed on May 5, 2014, found that Plaintiff had a torn right shoulder rotator cuff. (Doc. 1-1, p. 13). The MRI purports to be a comparison from October 30, 2009; however, there is no mention of whether Plaintiff's rotator cuff was torn previously. (Doc. 1-1, p. 13).

[3] It is not clear whether Plaintiff provided Defendant with the same documents attached to his complaint or if he provided Defendant with a separate injury report that is not before the Court.

Defendant further contends that under Louisiana law, delictual actions, including those brought under the Louisiana Products Liability Act ("LPLA"), are subject to a liberative prescription of one year. (Doc. 11-1, p. 2-3) (citing La. Civ. Code art. 3492; La. R.S. 9:2800.52). Defendant argues that prescription against Plaintiff's claim began to accrue on the date of his alleged injury, September 9, 2008, (Doc. 11-1, p. 3), and that Plaintiff's claims prescribed on September 13, 2009 because of an executive order by the Governor of Louisiana that suspended prescription in Louisiana between September 5, 2008 and September 12, 2008.[4] *Id.* Defendant further argues that Plaintiff's claim is prescribed because he waited "over six years after the date of the accident" to file suit. (Doc. 11-1, p. 4).

In his opposition[5] to Defendant's motion to dismiss, Plaintiff argues that "[Defendant] has already admitted to the federal government that the vehicle in question was defective, and faulty[.]" (Doc. 14). Plaintiff argues in his opposition that "the worsening of [his] traumatic brain injury among other injuries stress from Hurricane Gustav delayed [his] awareness, and supervisors on the job interfered with [his] doctors trying to pressure him back to work." (Doc. 14). Plaintiff claims that he was prejudiced from getting a proper evaluation by a civilian doctor because he was diagnosed by the Veterans Association Administration ("VA") with forty (40) percent brain trauma. (Doc. 14). Furthermore, Plaintiff argues that the Servicemembers Civil Relief Act[6] ("SCRA") applies to his claim because he is "technically still in the Army due to improper dismissal." *Id.*

---

[4] *See* La. Exec. Order No. BJ 08-92, Vol. 34 La. Reg. 1842-43 (Sept. 20, 2008), *available at* http://www.doa.louisiana.gov/osr/other/bj08-92.htm.

[5] While Plaintiff titled his motion "Objection to dismissal of my case," it is clear his motion is a motion in opposition to Defendant's motion. *See Erickson*, *supra* note 1.

[6] Plaintiff argues that the "Soldiers' and Sailors' Relief Act" applies to him. (Doc. 14.) The Act was amended and renamed in 2003. *See* SOLDIERS' AND SAILORS' CIVIL RELIEF ACT-AMENDMENT, PL 108-189, December 19, 2003, 117 Stat 2835 ("The Soldiers' and Sailors' Civil Relief Act of 1940 … is amended to read as follows … [t]his Act may be cited as the 'Servicemembers Civil Relief Act'.").

In its reply, Defendant responds that the SCRA does not apply to Plaintiff because he was dismissed from the Army over seventeen years before the accident. (Doc. 16, p. 2). Defendant further argues that the Act does not apply to Plaintiff because, even if he is still technically in the Army as alleged, Plaintiff is not on "active duty" as required by the SCRA. *Id.* Defendant argues that Plaintiff "could not have been on 'full-time duty in the active military service of the United States'" because "he was employed by the private company ICF International Consultant when the accident occurred." (Doc. 16, p. 3).

## II.    Discussion

### A.  Procedural Issues

First, it must be determined whether Defendant properly brought his Motion to Dismiss pursuant to Rule 12(b)(6). While Defendant claims to bring this motion pursuant to Rule 12(b)(6), Defendant attaches to its Memorandum in Support a thirty-eight page Tropical Cyclone Report on Hurricane Gustav from the National Hurricane Center's website.[7] (Doc. 11-2, p. 1). Defendant cites to the report to establish the date Hurricane Gustav made landfall. (Doc. 11-1, p. 2 n. 6). Defendant also attaches to its Reply Memorandum in Support two documents from another case previously before this Court. (Doc. 16-1, p. 1). Though Defendant made no request to the Court, it is reasonable to infer that Defendant is seeking to have the Court take judicial notice of these documents. Thus, it must be determined whether it is appropriate to do so.

### i.    Judicial Notice

The Fifth Circuit has explained that "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *see also, Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that

---

[7] *See* JOHN L. BEVEN II & TODD B. KIMBERLAIN, NAT'L HURRICANE CTR., TROPICAL CYCLONE REPORT: HURRICANE GUSTAV (Jan. 22, 2009), *available at* http://www.nhc.noaa.gov/2008atlan.shtml.

it is appropriate to take judicial notice under Rule 12(b)(6) of relevant publicly-available documents and transcripts). This Court has previously explained that "Federal Rule of Evidence 201 provides that a court may take judicial notice of an adjudicative fact 'that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Hall v. Louisiana*, No. 12-657, 2015 WL 1383532, at *1 (M.D. La. Mar. 23, 2015). The Fifth Circuit has held:

> Judicial notice may be taken of facts known at once with certainty by all the reasonably intelligent people in the community without the need of resorting to any evidential data at all ... Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be judicially noticed.

*Weaver v. United States*, 298 F.2d 496, 498-99 (5th Cir.1962) (citation omitted).

First, Defendant attached the National Hurricane Center's report on Hurricane Gustav to its Memorandum in Support to establish the date Hurricane Gustav made landfall. (Doc. 11-2, p. 1). This Court has previously explained that "the Fifth Circuit has held that a court may take judicial notice of governmental websites when considering a motion to dismiss." *Bombet v. Donovan*, No. 13-118, 2015 WL 65255, at *6 (M.D. La. Jan. 5, 2015) (citing *In re Katrina Canal Breaches Consol. Lit.*, 533 F. Supp. 2d 615 (E.D. La. 2008) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites.")). Accordingly, it is appropriate for the Court to take judicial notice of the report to establish the date Hurricane Gustav made landfall.

Second, Defendant attaches to its reply memorandum the complaint and amended complaint from a case previously before this Court. (*Davis v. United States Army*, No. 14-415

M.D. La. Mar. 5, 2015, Doc. 16-1).[8] Defendant uses Davis' previous complaint against the U.S. Army ("Army") to support its argument that "Plaintiff's dismissal from the Army … predates the accident at issue in this lawsuit by over seventeen years." (Doc. 16, p. 2). Defendant specifically cites to a "Certificate of Release or Discharge from Active Duty" (Doc. 16, p. 2 n. 2).  While Defendant does not express it as such, it clearly seeks for the Court to take judicial notice of the other case.

Here, the Court will take judicial notice of the Army certificate of discharge Plaintiff attached to his amended complaint in *Davis v. Army*. (No. 14-415, Doc 7-1, p. 4). The Court is guided in its analysis by *Prelic v. Medical Resources, Inc.*, 813 F. Supp. 2d 654 (D. Md. 2011) and *Flores v. United States Attorney General*, No. 14-198, 2015 WL 1088782 (E.D. Tex. Feb. 5, 2015).

In *Prelic*, the plaintiff brought a claim of retaliation, among others, against the defendant on the basis of an offer of a Release that required her to "relinquish the right to institute 'any action or complaint of any type in any administrative forum or court of law … '" in order to receive severance pay. *Id.* at 658-59. In order to determine whether the offer of a Release was an adverse employment action, that court took judicial notice of a severance agreement from another unrelated case before the same court "as it is available electronically via PACER of this Court's CM/ECF." *Id.* at 668 n. 13 (citing *Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records.")).

---

[8] Suit was filed by Mr. Davis against the U.S Army on July 11, 2014. (No. 14-415, Doc. 1). He amended his complaint on October 31, 2014. (No. 14-415, Doc. 7). On March 5, 2015, based on a Report and Recommendation of the United States Magistrate Judge, (No. 14-415, Doc. 11), this Court signed an order dismissing the case. (No. 14-415, Doc. 12). Mr. Davis filed a Notice of Appeal on March 19, 2015. (No. 14-415, Doc. 14).

In *Flores v. United States Attorney General*, the Eastern District of Texas recently applied *Prelich* to take judicial notice of numerous similar lawsuits filed by the same litigant and explained:

> The [140 similar lawsuits] at issue are capable of accurate and ready determination by reference to the record of the case available for public viewing in the Court's CM/ECF or PACER docketing system, and the public record of filings in those cases cannot reasonably be challenged. *See, e.g., Prelic v. Medical Resources, Inc.,* No. ELH–10–3394, 2011 U.S. Dist. LEXIS 93712 at \*36 n.13, 2011 WL 3678853 (D. Md. Aug. 19, 2011) (taking judicial notice of a severance agreement filed in another unrelated case pending in the same court "as it is available electronically via PACER of this Court's CM/ECF.") (citing *Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records.")).

No. 14-198, 2015 WL 1088782, at \*3 n. 3 (E.D. Tex. Feb. 5, 2015).

Here, the Court finds that the Army certificate of discharge from Davis' prior case is similarly capable of accurate and ready determination through this Court's CM/ECF or PACER docketing system, and the public record of Plaintiff attaching his certificate of discharge in that case cannot reasonably be challenged. Accordingly, the Court takes judicial notice of Plaintiff's Army certificate of discharge from his amended complaint in *Davis v. Army*, to establish that his separation date from the Army was July 29, 1991. (No. 14-415, Doc. 7-1, p. 4).

**B. Rule 12(b)(6) Standard**

In *Johnson v. City of Shelby, Mississippi*, 574 U.S. ____, 135 S.Ct. 346 (2014), the Supreme Court has explained:

> Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."

*Id.*, 135 S.Ct. at 346-347.

Interpreting Rule 8(a) and *Twombly*, the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)) (emphasis added).

Analyzing the above case law, our brother in the Western District stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

Finally, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502-503 (citations and internal quotations omitted).

### C. Analysis

After careful consideration of the relevant facts and law, the Court agrees with Defendant that Plaintiff's claims have prescribed.

Under Louisiana law, "[d]elictual actions are subject to a liberative prescription of *one year*. This prescription commences to run from the day injury or damage is sustained." La Civ. Code. art. 3492 (emphasis added). In this case, Plaintiff's alleged injury occurred on September 9, 2008. (Doc. 1-1, p. 19). Due to Hurricane Gustav, which made landfall on the Louisiana coast on September 1, 2008, the Governor of Louisiana suspended prescription between September 5, 2008 and September 12, 2008. La. Exec. Order No. BJ 08-92, Vol. 34 La. Reg. 1842-43 (Sept. 20, 2008). Thus, prescription began to run on Plaintiff's claim on September 13, 2008. However, Plaintiff filed suit on October 29, 2014, over six years after the accident. (Doc 1-1, p. 19).

In *Thompson v. Deutsche Bank Nat. Trust Co.*, the Fifth Circuit instructed that "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." 775 F.3d 298, 302 (5th Cir. 2014) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Thus, Louisiana's one year prescriptive period applies to motions brought under Rule 12(b)(6). Additionally, the Fifth Circuit has explained:

> The defendant has the initial burden of proving that a tort claim has prescribed, but if the defendant shows that one year has passed between the tortious acts and the filing of the lawsuit, then *the burden shifts to the plaintiff to prove an exception to prescription.*

*Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (internal citations and quotation omitted) (emphasis added).

This Court has explained exceptions to prescription as thus:

> Prescription begins to run at the time that the cause of action accrues unless an exception applies. One such exception, the doctrine of *contra non valentem,* suspends the running of the prescriptive period when the cause of action is not known or reasonably knowable by the plaintiff. Generally, the party excepting on the basis of prescription has the burden to prove that the prescriptive period has lapsed. However, when the cause of action is prescribed on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not been prescribed. To satisfy this burden, the plaintiffs *must initially allege facts with particularity* which indicate that the injury and its causal relationship to the alleged misconduct were not apparent or discoverable until within the year before the suit was filed.

*Big River Industries, Inc. v. Headwaters Resources, Inc.*, 971 F. Supp. 2d 609, 624 (M.D. La. 2013) (emphasis added) (internal citations and quotations omitted).

Furthermore, on a 12(b)(6) motion, when a claim is prescribed on its face, a plaintiff's allegations may be sufficient to prove an exception to prescription. *See, e.g.*, *Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 844 (E.D. La. 2011) *on reconsideration in part*, No. 11-871, 2012 WL 1230736 (E.D. La. Apr. 12, 2012) ("[t]aking [plaintiff's] statements as true, as must be done in a Rule 12(b)(6) motion, … [plaintiff's] allegations are sufficient to demonstrate the applicability of *contra non valentem* to suspend the running of prescription[.]"); *Corkern v. Hammond City*, No. 11-1828, 2012 WL 2597561, at *5 (E.D. La. July 5, 2012) (finding that the allegations contained in plaintiffs' complaint were sufficient to demonstrate the applicability of the continuing tort doctrine); *Big River*, 971 F. Supp. 2d at 624 ("the Court reserves findings on [*contra non*

*valentem*] until [plaintiff] submits its amended Complaint, wherein, [plaintiff] must allege facts with particularity to satisfy its burden to prove that the state law claims are not prescribed.").

Here, Defendant has successfully shown that Plaintiff's claims are prescribed on the face of his complaint because Plaintiff waited six years to file suit. It appears from the pleadings that Plaintiff's claim prescribed one year after September 13, 2008, on September 13, 2009. Thus, the burden shifts to Plaintiff to prove an exception to prescription.

In his opposition, Plaintiff raises several arguments as to why prescription has not run. The Court is not persuaded.

### i. Defendant's alleged admission

First, Plaintiff argues that "[Defendant] has already admitted to the federal government that the vehicle in question was defective, and faulty[.]" (Doc. 14). Plaintiff's argument is either attempting to assert that prescription was interrupted by acknowledgement or that prescription was renounced by Defendant. "Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." La. Civ. Code Art. 3464. "Prescription may be renounced only after it has accrued." La. Civ. Code Art. 3449.

The Louisiana Supreme Court has explained:

> Acknowledgment and renunciation differ in both substance and legal effect. Substantively, acknowledgment is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course; renunciation is the technical term designating the abandonment of rights derived from prescription that has accrued. In legal effect, acknowledgment interrupts prescription and erases the time that has accrued, with prescription recommencing anew from the date of interruption; renunciation obliterates the effect of prescription that has run. Because of these differences, renunciation is subject to more stringent requirements than acknowledgment.

*Lima v. Schmidt*, 595 So. 2d 624, 631 (La. 1992), *superseded on other grounds by Jenkins v. Starns*, 11–1170 (La.1/24/12), 85 So.3d 612 (internal citations omitted).

"[A]n acknowledgment is a simple admission of liability resulting in the interruption of prescription that has commenced to run, but not accrued." *Demma v. Auto. Club Inter-Ins. Exch.*, 2008-2810 (La. 6/26/09), 15 So. 3d 95, 98. Conversely, a "renunciation must be 'clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run.' " *Lima*, 595 So. 2d at 631.

While Plaintiff asserts that Defendant admitted to the government that his vehicle was defective, Plaintiff does not inform the Court of the date this alleged admission occurred. Even assuming *arguendo* that Defendant had admitted the defect to the government, Plaintiff also has not cited to any case law to establish that Defendant's alleged admission to the government would apply to his claims. Additionally, assuming *arguendo* that Defendant's admission applies to Plaintiff, his claims may still be prescribed if the alleged admission occurred more than a year before Plaintiff filed suit against Defendant. Thus, Plaintiff's argument "is a legal conclusion that the Court is not required to accept and does not suffice to prevent a motion to dismiss." *Reams v. Johnson*, 14-88, 2015 WL 300414, at *4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Accordingly, the Court rejects this argument. However, Plaintiff will be granted leave to amend to establish, with particularity, when Defendant's alleged admission to the government occurred and, more importantly, when and how Defendant acknowledged liability to the Plaintiff.

### ii. Contra Non Valentem

Next, Plaintiff argues in his opposition that "the worsening of [his] traumatic brain injury among other injuries stress from Hurricane Gustav delayed [his] awareness." (Doc. 14). Plaintiff claims that he was prejudiced from getting a proper evaluation by a civilian doctor because he was diagnosed by the Veterans Association Administration ("VA") with forty (40) percent brain trauma. (Doc. 14). Additionally, Plaintiff alleges that "supervisors on the job interfered with [his]

doctors trying to pressure [him] back to work." *Id.* Plaintiff's arguments, though inartful, are essentially invoking the doctrine of *contra non valentem*.

"*Contra non valentem non currit praescriptio* means that prescription does not run against a person who could not bring his suit." *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012). "*Contra non valentem* is a judicially created exception to the running of prescription used by courts to soften the occasional harshness of prescriptive statutes." *Tiger Bend, L.L.C. v. Temple-Inland, Inc.*, 56 F. Supp. 2d 686, 691-92 (M.D. La. 1999) (internal citations and quotations omitted).

While there are four categories of *contra non valentem*, only two are potentially relevant here:

> The doctrine may suspend the running of the prescriptive period where … (3) the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 294 (5th Cir. 1995) (internal citations and quotations omitted) (citing *Whitnell v. Menville*, 540 So.2d 304, 308 (La.1989)).

The third category applies "only when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction." *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 252 (internal citations omitted). The third category of *contra non valentem* may also apply in exceptional circumstances where a plaintiff is completely *unaware* of his injuries. Exceptional circumstances include a coma and amnesia caused by a defendant. *See Harsh v. Calogero*, 615 So. 2d 420 (La. App. 4th Cir. 1993). Nevertheless, even with severe brain trauma

that impairs cognitive functions, prescription will still run if a plaintiff is aware of his injuries. *Id*. at 423.

The fourth category is known as the "discovery rule." *Marin*, 48 So. 3d at 245. "Under the fourth category, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant." *Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996). However, where a plaintiff is aware that he has been injured, prescription begins to run even though he is not aware at that time of the full extent of the injury. "[P]rescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, ... even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act." *Marin*, 48 So. 3d at 246. Furthermore, the Fifth Circuit has made clear that "*contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002).

As an initial matter, Plaintiff did not raise any allegation in his complaint that his alleged worsening traumatic brain injury, other injuries, or stress from Hurricane Gustav delayed his awareness. This Court has previously explained that "[w]hile Fed. R. Civ Proc. 8 does not require an exhaustive listing of [a plaintiff's] claims, it does require 'a short and plain statement of the claim showing that the pleader is entitled to relief.' It is insufficient for [a plaintiff] to raise a [new claim] in his Memorandum in Opposition." *Reams v. Johnson*, No. 14-88, 2015 WL 300414, at *4 n. 3 (M.D. La. Jan. 22, 2015). The new claims raised in Plaintiff's opposition are not properly before the Court "[b]ecause this is not the proper procedure for bringing a [new complaint], nor the proper procedure for amending a complaint." *Id.* at *4. Thus, Plaintiff's claims must be dismissed. However, even assuming *arguendo* that Plaintiff's claims were

properly before the Court,[9] Plaintiff's allegations are still not sufficient to satisfy the requirements of the third or fourth categories of *contra non valentem*.

### a) Delayed awareness

Plaintiff claims that his injuries delayed his awareness. Yet, Plaintiff is not specific as to when he became aware of his injuries or his cause of action. As explained above, the burden has shifted to Plaintiff to show how his claim has not prescribed. For Plaintiff "[t]o satisfy this burden, [Plaintiff] must initially allege facts with particularity which indicate that the injury and its causal relationship to the alleged misconduct were not apparent or discoverable until within the year before the suit was filed." *Big River*, 971 F. Supp. 2d at 624.

With respect to Plaintiff's injuries, while he claims his awareness was delayed, he attached to his complaint documents which show a doctor's examination on the day of the injury that diagnosed him with cervical strain, but certified him as fit to return to work that same day.[10] (Doc. 1-1, p. 10). Plaintiff filled out and signed a "crash report driver/witness voluntary statement" after the crash detailing the events of the crash. (Doc. 1-1, p. 8). Finally, Plaintiff was aware of his injuries well before filing suit because he alleges in his complaint that his injuries have "become worse since the accident *over the years*." (Doc. 1) (emphasis added). Based on his complaint, read in its entirety, it seems doubtful that he was unaware of his injuries on the day of the accident.

---

[9] In the joint status report, Plaintiff asserts a number of new and specific injuries: "Memory loss, anemia, back pain, ankle and leg pain, arthritis in legs and back, whiplash, internal bleeding, blurry and diminished eye vision, clot in right leg, right torn rotator cup, heart problems, bulging back, and headaches, and sleep apnea." (Doc. 15, p. 1). However, a status report is not a pleading. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 n. 6 (7th Cir. 1996) ("[a] joint status report is certainly not a pleading."). Also, a joint status report is also not the proper way to amend a complaint; Rule 15 provides the proper procedure for amending a complaint. *See* Fed. R. Civ. P. 15. "A court may not look beyond the pleadings in ruling on [a 12(b)(6) motion.]" *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Thus, for the purposes of a 12(b)(6) motion, the Court does not consider Plaintiff's assertions from the joint status report.

[10] When allegations are contradicted by documents attached to the pleading, the document and not the allegation controls. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

Next, with respect to Plaintiff's "injuries and their causal relationship to the alleged misconduct" (i.e., the defective airbag), *Big River*, 971 F. Supp. 2d at 624, Plaintiff has not clearly alleged facts that plausibly show which injuries were caused by the defective airbag. Plaintiff asserts that the accident and airbag failing to deploy left him with "multiple injuries." (Doc. 1, p. 2). From the documents attached to his complaint, and from his opposition, his injuries include cervical strain, "pain in limb,"[11] a torn right shoulder rotator cuff, stress, and traumatic brain injury. (Doc. 1-1, p. 10-13); (Doc. 14). However, Plaintiff has not clearly alleged which of these injuries were suffered in the accident.

Furthermore, Plaintiff's suggestion that brain trauma caused a "delayed awareness" of his injury and its connection to the accident seems to be contradicted by his detailed account of the accident in his crash report statement. *See Harsh*, 615 So. 2d at 423. ("[plaintiff] communicate[d] her version of the facts to other people … [c]learly, although plaintiff may have suffered injuries which have affected her cognitive ability, she was not in such a stupor as to not know the cause of her injury."). However, Plaintiff will be granted leave to amend his complaint to establish if his traumatic brain injury was caused by the defective airbag, when it occurred and how, if at all, it accounts for his failure to timely file the lawsuit.

Similarly, Plaintiff's detailed account of the accident seems to refute his argument that his awareness was delayed by "stress from Hurricane Gustav." (Doc. 14). As alleged, the Court cannot determine whether Plaintiff's stress was severe enough to suspend prescription. *See Held v. State Farm Ins. Co.*, 610 So.2d 1017 (La.App. 1st Cir.1992), writ den., 613 So.2d 975 (La.1993) (holding that plaintiff's post-traumatic stress disorder caused by sexual abuse when she was a minor prevented her from acting until she knew she was completely innocent and her

---

[11] As the referral form attached to Plaintiff's complaint is not specific as to which limb Plaintiff was having pain in, the Court, for the purposes of this motion, considers this a separate injury.

father was solely responsible.) However, Plaintiff will be granted leave to amend his complaint to establish if his stress was severe enough to prevent him from timely filling the lawsuit.

With respect to "discovering" the causal relationship between his injuries and Defendant's allegedly defective airbag, the fourth category of *contra non valentem*, it is not clear when Plaintiff became aware of the alleged defect in the airbag system. Plaintiff has not alleged when he became aware of the alleged defect. Even so, Plaintiff was clearly aware of the fact that the airbag failed to deploy, though he may not have been aware that the alleged defect caused the failure. Thus, without any allegation of when he became aware of the defect, Plaintiff's *contra non valentem* arguments are not plausible.

Plaintiff will be granted leave to amend his complaint to cure these defects to establish what injuries he suffered in the accident, when and how he became aware of these injuries and any alleged causal connection to the airbag injury.

### b) Third-party interference

Next, the Court rejects Plaintiff's argument that prescription is interrupted by virtue of his supervisors' alleged interference with his doctors and the allegation that they pressured him "not [to go] to the Doctor or [he] would lose [his] job." (Doc. 1-1, p. 19). The third category of *contra non valentem*, as recently explained by the Eastern District, does not apply to the actions of a third party:

> [T]his exception is limited to cases in which the defendant *himself* prevents the plaintiff from filing suit. *See, e.g., Vinzant v. United States,* 458 F. App'x 329, 332 (5th Cir.2012) (holding the petitioner did not satisfy *contra non valentem* exception by alleging third parties prevented him from suing the defendants); *Harris v. Hegmann,* 198 F.3d 153, 158 (5th Cir.1999) (defining the relevant *contra non valentem* exception as applicable "when the *defendant* prevents the plaintiff from bringing suit" (emphasis added)); *Wimberly v. Gatch,* 635 So.2d 206, 211 (La.1994)("The third category applies to cases where the *defendant* engages in

> conduct which prevents plaintiff from availing himself of his
> judicial remedies." (emphasis added)).

*Williams v. Saltmachia*, 14-1428, 2015 WL 350266, at *3 (E.D. La. Jan. 26, 2015) (emphasis in original).

Accordingly, as Plaintiff is alleging his supervisors, rather than Defendant, interfered with his doctors, Plaintiff's argument does not satisfy the third category of *contra non valentem*. Plaintiff will not be granted leave to amend to cure this defect.

### c) Unable to be diagnosed

Plaintiff claims that he was "not given a chance to be diagnosed and treated" (Doc. 1-1, p. 19), but offers no further explanation as to how and for what period of time he was not given a chance to be diagnosed and treated or who was responsible. This allegation is similar to others made by Plaintiff suggesting that he was unaware of his condition or its connection to the accident so as to invoke the *contra non valentem* exception to prescription. Despite this vague allegation, documents attached to Plaintiff's complaint show that he was diagnosed several times by doctors, as explained above.[12] Nonetheless, Plaintiff will be granted leave to amend to cure this defect.

### iii. The Servicemembers Civil Relief Act

Next, Plaintiff argues that the SCRA applies to him because he is "technically still in the Army due to improper dismissal." (Doc. 14). In his complaint, Plaintiff alleges that he is a veteran of the Army. (Doc. 1-1, p. 19). However Plaintiff does not allege either when he was in the Army or when he was discharged.

The SCRA "provide[s] for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of *servicemembers during*

---

[12] *See Riley*, *supra* note 10.

*their military service.*" 50 App. U.S.C.A. § 502 (2) (emphasis added). As the Eastern District has previously explained, "… the [SCRA] provides that '[t]he period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the brining of any action or proceeding in a court ... by the servicemember…." *Murphree v. Commun. Technologies, Inc.*, 460 F. Supp. 2d 702, 711 (E.D. La. 2006).

The SCRA defines a servicemember as "a member of the uniformed services[.]" 50 App. U.S.C.A. § 511 (1). The SCRA further defines "military service," relevant to this case, as "active duty." Active duty means, "full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned." 50 App. U.S.C.A. § 511 (2)(A)(i).

The Fifth Circuit has instructed that:

> The provision[s] of the Relief Act are to be liberally construed. *Koons v. Nelson,* 113 Colo. 574, 160 P.2d 367, 372 (1945). Although the act is to be liberally construed it is not to be used as a sword against persons with legitimate claims. *Slove v. Strohm,* 94 Ill.App.2d 129, 236 N.E.2d 326, 328 (1968). The Relief Act is to be administered as an instrument to accomplish substantial justice which requires an equitable consideration of the rights of parties to the end that their respective interests may be properly conserved. *1463 *New York Life Ins. Co. v. Litke,* 181 Misc. 32, 45 N.Y.S.2d 576, 582 (1943).

*Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462-63 (5th Cir. 1995).

Defendant argues that Plaintiff is not on "active duty" as required by the SCRA because he was discharged from the Army over seventeen years prior to the accident, and that employed by a private company at the time of the accident. (Doc. 16, p. 3). As stated above, Plaintiff argues that he is "technically still in the Army due to improper dismissal." (Doc. 14). Further, In his complaint, Plaintiff asserts that he was employed by ICF between April 30, 2007 and March

17, 2009. (Doc. 1, p. 2). Additionally, Plaintiff attaches to his complaint his crash report statement which provides that he was on duty with ICF at the time of the accident. (Doc 1-1, p. 11).

Here, the Court agrees with Defendant that the SCRA does not apply to Plaintiff's claims. Plaintiff's Army certificate of discharge provides that he was discharged from the Army on July 29, 1991. (No. 14-415, Doc 7-1, p. 4). Plaintiff's discharge occurred over seventeen years prior to the September 9, 2008, accident. Plaintiff's argument that he is "technically still in the Army due to improper dismissal" does not reasonably satisfy the SCRA's "active duty" requirement because, even if he was improperly dismissed, he was not in full-time active military service after his discharge.[13]

Therefore, Defendant's motion is granted on this ground. Additionally, Plaintiff will not be granted leave to amend to cure this deficiency because the SCRA does not reasonably apply to his claims.

### D.  Leave to Amend

Here, the Court finds it appropriate to grant Plaintiff leave to amend his complaint. The Fifth Circuit has explained that:

> Fed.R.Civ.P. 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court. However, the court should freely give leave to amend "when justice so requires." It is often said that this determination rests in the sound discretion of the district court. However, the Rule "evinces a bias in favor of granting leave." The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. Thus, if the district court lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial." Id.
>
> Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior

---

[13] The Court need not address Defendant's argument that Plaintiff was employed by a private company at the time of the accident because Plaintiff's certificate of discharge establishes when he was discharged from the Army.

amendment, undue prejudice to the opposing party, and the futility of the amendment.

*Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (citations omitted).

Here, the Court finds that Plaintiff's claims, though tenuous, may be plausible if he amends his complaint. Therefore, the Court finds no substantial reason to deny Plaintiff leave to amend his complaint.

First, Plaintiff has not established when Defendant allegedly admitted to the government that his vehicle was defective nor has he stated if and when the Defendant acknowledged liability to the Plaintiff for his injuries. Therefore, Plaintiff is given leave to amend his complaint to allege, with particularity, if and when Defendant made these admissions.

Further, Plaintiff has not sufficiently alleged what injuries were suffered in the accident or how they were caused by the allegedly defective airbag. Thus, Plaintiff is given leave to amend his complaint to allege what injuries he suffered in the accident and any alleged causal connection to the airbag injury.

Plaintiff also has not alleged when he became aware of the alleged defect in the airbag and when and how and for how long any injury suffered in the accident justifiably delayed his filing suit. As explained above, Plaintiff has suggested that *contra non valentem* may apply to his claim but has provided insufficient information to determine whether such a claim is valid. Plaintiff, therefore, will be granted leave to amend his complaint to cure these deficiencies.

Additionally, information contained in this case and another suggests that the SCRA does not reasonably apply to Plaintiff's claim. Thus, Plaintiff will not be granted leave to amend his complaint to cure this deficiency because any such amendment would be futile.

Finally, Plaintiff has alleged that a third party interfered with his doctors. As explained above, *contra non valentem* does not apply to the actions of third parties. Consequently, Plaintiff will not be granted leave to amend his complaint to cure this deficiency because any such amendment would be futile.

III.    **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 11) is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff is given twenty-eight (28) days within which to amend his complaint to cure the deficiencies in his complaint and to allege:

a) When Defendant admitted to the government that its vehicle was defected;

b) If and when the Defendant acknowledged liability to the Plaintiff for his injuries;

c) What injuries were suffered in the accident and whether they were caused by the allegedly defective airbag; and

d) When Plaintiff became aware of the alleged defect in the airbag and when, how, and for how long any injury suffered in the accident justifiably delayed his filing suit; and

**IT IS FURTHER ORDERED** that, in the event that Plaintiff fails to file an amendment to his complaint within that time, his claims will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>May 29, 2015</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**